UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 23-cv-01381

SIMCOE LLC,

    Plaintiff,

v.

MARALEX RESOURCES, INC.,

    Defendant.

## COMPLAINT

Plaintiff SIMCOE LLC ("SIMCOE"), for its claims against Defendant Maralex Resources, Inc. ("Maralex"), alleges as follows:

### PARTIES AND VENUE

1. SIMCOE is a limited-liability company whose sole member is SIMU LLC, a Delaware limited-liability company. SIMU's sole member is VEPU Inc., a Delaware corporation with its principal place of business in Houston, Texas. SIMCOE takes VEPU's Delaware and Texas citizenship for diversity-jurisdiction purposes.

2. Maralex is a Colorado corporation with its principal place of business in Ignacio, Colorado. Maralex is a Colorado citizen for diversity-jurisdiction purposes. Maralex may be served with service of process by serving its registered agent, Mickey O'Hare, at 775 Goddard Avenue, Ignacio, Colorado 81137.

3. Jurisdiction is proper in this Court under 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties and the amount in controversy, without interest, costs, or attorneys' fees, exceeds the amount required by 28 U.S.C. § 1332.

**FACTS**

4. SIMCOE owns working and other types of interests in oil-and-gas leases in La Plata County, Colorado, and elsewhere.

5. Producing natural-gas wells are located on the oil-and-gas leases in La Plata County in which SIMCOE owns working interests.

6. Certain of the oil-and-gas leases and natural-gas wells in which SIMCOE owns interests in La Plata County are committed to Joint Operating Agreements ("JOA") that designate Maralex as the operator of the natural-gas wells.

7. The JOAs are contracts by, among, and between the working-interest owners in the properties subject to the JOAs, governing operations of those properties.

8. SIMCOE does not take in kind and market its proportionate share of production from certain of the natural-gas wells operated by Maralex. Instead, under the terms of the JOAs, Maralex either purchases SIMCOE's proportionate share of production or markets that production on SIMCOE's behalf.

9. Maralex and BP America Production Company ("BP") were parties to a Gas Marketing Letter Agreement dated February 2014 (the "BP 2014 Marketing Agreement").

10. SIMCOE purchased BP's interests in the oil-and-gas leases and natural-gas wells at issue, effective April 2019.

11. Certain of the oil-and-gas leases and natural-gas wells purchased by SIMCOE from BP had been subject to the BP 2014 Marketing Agreement.

12. The BP 2014 Marketing Agreement requires that any assignment of the agreement be consented to in writing by the non-assigning party (i.e., Maralex).

13. Maralex did not consent in writing to BP's assignment of the 2014 Marketing Agreement to SIMCOE.

14. Where Maralex is purchasing or marketing SIMCOE's share of production, the JOAs require Maralex to pay SIMCOE for its production "at the best price obtainable in the area."

15. From the time SIMCOE purchased BP's interest, until about April 2022 (production month), Maralex purchased or marketed SIMCOE's production from the gas wells at issue, and paid SIMCOE for its production.

16. Beginning in or around May 2022 production, Maralex ceased paying SIMCOE for its proportionate share of production.

17. For all production from May 2022 through about November 2022, Maralex refused to pay SIMCOE for its proportionate share of production.

18. SIMCOE repeatedly objected to Maralex's failure to remit payment to SIMCOE for its proportionate share of production and demanded full payment for its production. Maralex refused SIMCOE's demands, attempting to justify its improper conduct, as explained below.

19. Maralex owns the majority interest in, and operates, a natural-gas gathering system that transports produced gas from certain of the wells at issue—the "Back Yard Project Gathering System."

20. SIMCOE does not own an interest in the Back Yard Project Gathering System.

21. The Back Yard Project Gathering System is not subject to the JOAs.

22. Maralex transports gas gathered by its Back Yard Project Gathering System to the Red Cedar Gathering System, owned and operated by the Red Cedar Gathering Company, a division of the Southern Ute Indian Tribe.

23. Maralex sells the production transported on its Back Yard Project Gathering System to Red Cedar Gathering Company.

24. In its capacity as owner/operator of the Back Yard Project Gathering System, and not as operator of the properties at issue, Maralex entered into a contract with Red Cedar Gathering Company to increase the amount of gas Maralex, as owner/operator of the Back Yard Project System, delivered to the Red Cedar Gathering System from Maralex's Back Yard Project Gathering System.

25. Maralex negotiated a new contract, or renegotiated an existing contract, with Red Cedar Gathering Company containing a "minimum volume commitment" ("MVC"), requiring Maralex, in its capacity as operator of the Back Yard Project Gathering System, to deliver an agreed-upon volume from the Back Yard Project Gathering System.

26. If Maralex does not meet the MVC, the contract between Maralex, in its capacity as owner/operator of the Back Yard Project Gathering System, and Red Cedar Company requires Maralex to pay Red Cedar company a penalty (the "MVC Penalty").

27. Maralex was unable to secure sufficient production on its Back Yard Project Gathering System to meet its MVC to Red Cedar Company. As a result, according to Maralex, Red Cedar "confiscated" the proceeds attributable to all production on Maralex's Back Yard Project Gathering System to meet Maralex's Backyard Project Gathering System MVC Penalty.

28. Maralex has refused SIMCOE's repeated requests for information relating to the Red Cedar Company Contract and a copy of that contract, asserting "confidentiality."

29. SIMCOE has objected to Maralex's utilization of SIMCOE's production or proceeds attributable to that production as payment for Maralex's Back Yard Project Gathering System MVC Penalty.

30. In addition to not paying SIMCOE for its proportionate share of production, Maralex has billed its Back Yard Project Gathering System MVC Penalty to SIMCOE as a JOA joint-interest expense.

31. The JOAs provide that the Operator may incur expenses in connection with the development and operation of the properties committed to the JOAs. These expenses are to be borne by the JOA parties in proportionate amounts.

32. With exceptions not relevant here, each JOA specifies an expenditure limit which cannot be exceeded without the consent of all parties to the JOA ("JOA Expenditure Limit").

33. The MVC Penalty exceeds the JOA Expenditure Limit.

34. SIMCOE did not consent to the MVC, or the MVC Penalty, in any manner, including, but not limited to, as a joint-interest expense under the JOA.

35. Separate and apart from SIMCOE's lack of consent to the MVC Penalty, the MVC Penalty is not an expense relating to the development and operation of the properties subject to the JOA, and cannot be treated as such by Maralex.

36. The JOAs do not permit Maralex to utilize SIMCOE's production or proceeds attributable to that production as payment for Maralex's MVC Penalty.

37. If the BP 2014 Marketing Agreement applies to SIMCOE's production, the BP Marketing Agreement requires Maralex to market SIMCOE's production "at commercially reasonable terms." Neither application of the MVC nor imposition of the MVC Penalty, incurred by Maralex in connection with its ownership and operation of the Back Yard Project Gathering System, is "commercially reasonable."

38. If the BP 2014 Marketing Agreement applies to SIMCOE's production, that contract does not require Maralex to pay SIMCOE on the "same price or terms that [Maralex] receives for its share" of production.

39. If the BP 2014 Marketing Agreement applies to SIMCOE's production, Maralex is entitled to deduct only "applicable" "fees incurred associated with treating, compression, processing, gathering, and transportation." The MVC Penalty is not such a fee.

40. If the BP 2014 Marketing Agreement applies to SIMCOE's production, that agreement provides that Maralex may cease selling SIMCOE's production where it is "uneconomical" to sell that production. Application of Maralex's MVC Penalty to Simcoe's productions rendered it "uneconomical" for Maralex to sell SIMCOE's production, yet Maralex refused to cease selling SIMCOE's production.

41. Maralex refused to cease selling SIMCOE's production because it was using that production or proceeds from that production to pay its own MVC Penalty.

42. The BP 2014 Marketing Agreement does not permit Maralex to utilize SIMCOE's production or proceeds attributable to that production as payment for Maralex's MVC Penalty.

43. SIMCOE requested that Maralex act to prevent ongoing and future loss to SIMCOE. Maralex refused to do so because it was using that production or proceeds from that production to pay its own MVC Penalty.

44. SIMCOE has requested that Maralex enter into a gas-gathering agreement relating to SIMCOE's production on the Back Yard Project Gathering System, so that SIMCOE may take its production in kind and market that production itself. Maralex has refused to do so. Maralex refused to do so because it was using SIMCOE's production or proceeds from that production to pay its own MVC Penalty.

## COUNT I
## BREACH OF JOINT OPERATING AGREEMENTS

45. SIMCOE re-alleges and incorporates by reference the allegations in Paragraphs 1–44.

46. SIMCOE has performed all its material obligations under the JOAs.

47. By reason of its failure to pay SIMCOE for its proportionate share of production, and other conduct, Maralex materially breached the JOAs.

48. By reason of its billing the MVC Penalty as a joint-interest expense, and other conduct, Maralex materially breached the JOAs.

49. By reason of its refusal to allow SIMCOE to take its proportionate share of production in kind, and other conduct, Maralex materially breached the JOAs.

50. In the alternative, by reason of its failure to obtain SIMCOE's consent to the MVC Penalty before incurring that expense, Maralex materially breached the JOAs.

51. As a result of Maralex's breach of the JOAs, SIMCOE has suffered compensatory damages in an amount to be proven at trial.

52. As a result of Maralex's breach of the JOAs, SIMCOE has suffered incidental and consequential damages in an amount to be proven at trial.

## COUNT II
## (ALTERNATIVE) BREACH OF BP 2014 MARKETING AGREEMENT

53. SIMCOE re-alleges and incorporates by reference the allegations in Paragraphs 1–52.

54. The Count is made in the alternative, in the event it is determined that the BP 2014 Marketing Agreement applies to the marketing of some or all of SIMCOE's production.

55. SIMCOE has performed all its material obligations under the BP 2014 Marketing Agreement.

56. By reason of its failure to pay SIMCOE for its proportionate share of production, and other conduct, Maralex materially breached the BP 2014 Marketing Agreement.

57. By reason of its failure to pay SIMCOE for its proportionate share of production on "commercially reasonable terms," and other conduct, Maralex materially breached the BP 2014 Marketing Agreement.

58. By reason of its application of its own MVC Penalty as an "applicable fee" subject to the BP 2014 Marketing Agreement, and other conduct, Maralex materially breached the BP 2014 Marketing Agreement.

59. By reason of its failure to cease marketing SIMCOE's for its proportionate share of production on terms that are "uneconomical," and other conduct, Maralex materially breached the BP 2014 Marketing Agreement.

60. As a result of Maralex's breach of the BP 2014 Marketing Agreement, SIMCOE has suffered compensatory damages in an amount to be proven at trial.

61. As a result of Maralex's breach of the BP 2014 Marketing Agreement, SIMCOE has suffered incidental and consequential damages in an amount to be proven at trial.

## COUNT III
## BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

62. SIMCOE re-alleges and incorporates by reference the allegations in Paragraphs 1–61.

63. The JOAs and BP 2014 Marketing Agreement impose an implied duty of good faith and fair dealing upon Maralex. The duty of good faith and fair dealing prohibits Maralex from doing anything to prevent SIMCOE from receiving the benefit of its agreements.

64. By reason of its failure to pay SIMCOE for its proportionate share of production, and other conduct, Maralex breached its implied duty of good faith and fair dealing.

65. By reason of its utilization of SIMCOE's production, or proceeds attributable to SIMCOE's production, in connection with its own MVC Penalty, and other conduct, Maralex breached its implied duty of good faith and fair dealing.

66. By reason of its agreement to a contract containing an MVC or an MVC Penalty without owning the volume of production necessary to meet the MVC, and its utilization of SIMCOE's production in connection with the MVC Penalty, and other conduct, Maralex breached its implied duty of good faith and fair dealing.

67. By reason of its insistence on paying SIMCOE on the "same price or terms that [Maralex] receives for its share" of production, and other conduct, Maralex breached its implied duty of good faith and fair dealing.

68. By reason of its failure to pay SIMCOE for its proportionate share of production on "commercially reasonable terms," and other conduct, Maralex breached its implied duty of good faith and fair dealing.

69. By reason of its interpretation of its own MVC Penalty as an "applicable fee" subject to the BP 2014 Marketing Agreement, and other conduct, Maralex breached its implied duty of good faith and fair dealing.

70. By reason of its failure to cease marketing SIMCOE's for its proportionate share of production on terms that are "uneconomical," and other conduct, Maralex breached its implied duty of good faith and fair dealing.

71. By reason of its refusal to allow SIMCOE to take its proportionate share of production in kind, and other conduct, Maralex breached its implied duty of good faith and fair dealing.

72. By reason of its refusal to enter into a gas-gathering agreement relating to SIMCOE's production on the Back Yard Project Gathering System, so that SIMCOE may take its production in kind and market that production itself, and other conduct, Maralex breached its implied duty of good faith and fair dealing.

73. As a result of Maralex's breach of its implied duty of good faith and fair dealing, SIMCOE has suffered compensatory damages in an amount to be proven at trial.

74. As a result of Maralex's breach of its implied duty of good faith and fair dealing, SIMCOE has suffered incidental and consequential damages in an amount to be proven at trial.

## COUNT IV
## UNJUST ENRICHMENT

75. SIMCOE re-alleges and incorporates by reference the allegations in Paragraphs 1–74.

76. On its own behalf and in its capacity as owner and operator of the Back Yard Project Gathering System, Maralex entered into a contract with Red Cedar Company that included an MVC and MVC Penalty.

77. Maralex has utilized SIMCOE's proportionate share of production, or the proceeds attributable to SIMCOE's production, to pay the MVC Penalty it unilaterally and solely incurred.

78. Maralex wrongly received and retained SIMCOE's production or proceeds for its own use without SIMCOE's consent.

79. Maralex wrongfully received a benefit for the period in which it received and kept SIMCOE's production or proceeds.

80. Maralex benefitted at the expense of SIMCOE.

81. It would be unjust to allow Maralex to retain SIMCOE's production or proceeds.

82. As a result of Maralex's unjust enrichment, SIMCOE is entitled to restitution from Maralex.

83. As a result of Maralex's unjust enrichment, SIMCOE is entitled to pre- and post-judgment interest, attorneys' fees and costs, and any other equitable relief to which SIMCOE may be justly entitled.

## COUNT V
## FAILURE TO ACT AS A REASONABLY PRUDENT OPERATOR

84. SIMCOE re-alleges and incorporates by reference the allegations in Paragraphs 1–83.

85. As operator, Maralex is required to operate the gas wells in which SIMCOE owns an interest reasonably and diligently.

86. By reason of its failure to pay SIMCOE for its proportionate share of production, and other conduct, Maralex breached its duty to operate the properties reasonably and diligently.

87. By reason of its utilization of SIMCOE's production, or proceeds attributable to SIMCOE's production, in connection with its MVC Penalty, and other conduct, Maralex breached its duty to operate the properties reasonably and diligently

88. By reason of its agreement to a contract containing an MVC or MVC Penalty without owning the volume of production necessary to meet the MVC, and its utilization of SIMCOE's production in connection with the MVC Penalty, and other conduct, Maralex breached its duty to operate the properties reasonably and diligently.

89. As a result of Maralex's breach of its duty to operate the properties reasonably and diligently, SIMCOE has suffered compensatory damages in an amount to be proven at trial.

90. As a result of Maralex's breach of its duty to operate the properties reasonably and diligently, SIMCOE has suffered incidental and consequential damages in an amount to be proven at trial.

## COUNT VI
## DECLARATORY JUDGMENT

91. SIMCOE re-alleges and incorporates by reference the allegations in Paragraphs 1–90.

92. SIMCOE and Maralex are parties to various JOAs. Maralex asserts that SIMCOE and Maralex are parties to the BP 2014 Marketing Agreement.

93. A dispute has arisen between SIMCOE and Maralex about the Parties' rights and obligations under the JOAs. In the alternative, a dispute has arisen between SIMCOE and Maralex about the applicability of the BP 2014 Marketing Agreement.

94. Neither the JOAs nor the BP 2014 Marketing Agreement (if applicable in part or whole) allows Maralex to cease payment to SIMCOE for its proportionate share of production

95. Neither the JOAs nor the BP 2014 Marketing Agreement (if applicable in part or whole) allows Maralex to utilize SIMCOE's production, or proceeds attributable to SIMCOE's production, in connection with its MVC Penalty, incurred by Maralex in its capacity as owner and operator of the Back Yard Project Gathering System.

96. SIMCOE respectfully asks the Court to declare its obligations under the JOAs, or if applicable, the BP 2014 Marketing Agreement.

## PRAYER FOR RELIEF

SIMCOE requests that this Court enter a judgment against Maralex, granting SIMCOE the following relief:

(a) compensatory, incidental, and consequential damages;

(b) pre- and post-judgment interest;

(c) punitive damages;

(d) attorneys' fees and costs; and

(e) any other relief the Court deems just and proper.

Dated: June 1, 2023.                    Respectfully submitted,

/s/ Mark D. Gibson
Mark D. Gibson
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO 80302
(303) 295-5111
mdgibson@hollandhart.com

Robert J. Sutphin
HOLLAND & HART LLP
P.O. Box 2208
Santa Fe, NM 87504
(505) 988-4421
rsutphin@hollandhart.com

*Attorneys for Plaintiff SIMCOE LLC*